Ray CROUCH, Respondent,

v.

W. A. BROOKSHIRE, Appellant.

No. 22983.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1959.

W. A. Brookshire, Columbia, for appellant.

Barkley M. Brock, Poague & Brock, Clinton, for respondent.

MAUGHMER, Commissioner.

This case originated in Henry County, Missouri. On change of venue it was transferred to Cass County. A jury was waived and all issues were tried by the court. Only Count I of plaintiff's second amended petition with defendant's answer and denial thereof now remain in the case. All other counts and counterclaims have been disposed of, through either voluntary dismissal or by adverse court findings, with no appeal therefrom. Plaintiff had judgment in the sum of $2,759.22, and defendant has appealed. The recovery was reimbursement for pasture, feed and care allegedly furnished by plaintiff for defendant's cattle pursuant to an oral agreement.

Plaintiff, Ray Crouch, is an automobile dealer residing in Clinton, Missouri. During 1957 and 1958, he owned a 440 acre farm located some 12 miles distant from Clinton and near Deepwater, Missouri. His nephew, Ernest West, lived on the farm and was a sort of tenant manager. On this farm Mr. Crouch had some years previously imported and sowed Kentucky fescue grass seed. He testified that in the fall of 1957, he had about 300 acres of fescue grass growing on the farm, that this grass made good winter pasture, that he used it as pasture during the winter and until about March 15. It was his practice not to pasture after March 15, and as a result he usually secured a seed crop.

Mr. Crouch placed an advertisement in the Star Farmer offering this grass acreage for rent as cattle pasture. The defendant, W. A. Brookshire, read the advertisement, called Mr. Crouch on the telephone and an arrangement was made to pasture approximately 100 head of Mr. Brookshire's cattle for $3.50 per month each. The first truck loads arrived December 7, 1957, and shortly thereafter defendant paid $350, which would cover pasturage for one month for 100 head. Included in this first shipment were 18 mature bulls and it was concerning these bulls that the first of numerous disagreements between plaintiff and defendant arose. Defendant never did, during the winter of 1957–1958, have more than about 50 head of mature cattle on pasture with the plaintiff. Plaintiff had other cattle, including cows, in these pastures. He said it was necessary to keep the bulls in dry lots away from these other cattle, and he requested that the bulls be removed. Defendant claimed plaintiff made no exception as to the bulls. Mr. Crouch asserted that during the ensuing weeks in December and January, the ground—much of the time—was covered with heavy, hard-crusted snow and it was therefore necessary to feed hay and pellets. Plaintiff also stated that he incurred some veterinary bills for treating sick cows and having others tested for Bang's disease, as required by law.

On Sunday, February 9, 1958, defendant called at the Crouch farm for the purpose of removing some of his cattle. Plaintiff refused to permit him to do so unless the balance, which plaintiff claimed was due him for feed and other bills, was first paid. Defendant refused to pay, claiming the $350 he had already paid covered the two months' pasture bill for the approximately 50 head he had on the Crouch farm. Resultant from this impasse the cattle remained on the Crouch farm until about April 28, 1958, the parties in the meantime having further altercations about it. From April 28 until July 15, 1958, the cattle were pastured on the farm of one R. G. Duncan at a cost of $4 per head per month. Plaintiff had entered into a contract with Mr. Duncan to pasture these cattle and he paid him for it. On July 15, the animals were returned by truck to the Crouch farm, where they remained until October 9, 1958 (the last date covered by the judgment).

Under Count I of plaintiff's second amended petition (upon which the judg-

ment is predicated) plaintiff lists (1) pasture furnished for defendant's cattle; (2) hay, salt, pellets and feed supplied; (3) veterinarian bills allegedly paid; (4) labor and trucking expense incurred in transporting the cattle to and from the Duncan farm, and (5) the excess of 50 cents per head per month paid Duncan over the rate plaintiff had agreed upon with defendant, all in the sum total of $3,109.22, which after the credit of $350 which defendant had paid, left a balance of $2,759.22, for which latter amount plaintiff had judgment.

On behalf of the plaintiff, testimony was given by four witnesses. The evidence of Richard Young had to do with an assault charged in defendant's counterclaim. We are not now concerned with that issue. Dr. John A. Chapin, veterinary, testified respecting his professional services for the Brookshire cattle. The plaintiff and his farm manager, Mr. West, stated that the feed and pasture, as alleged, were in truth and fact actually furnished, and that these charges were fair and reasonable.

■ Mr. Brookshire himself was the only witness offered on behalf of the defendant. His evidentiary contention was that when he first tried to remove the cattle on February 9, 1958, the $350 payment which he had made covered the pasture bill on the 50 head for the whole two month period; that Crouch was neither authorized nor had the right to assess any other charges, was not legally entitled to hold the cattle, nor to hold defendant liable for any further pasture and feed bills. Whether or not defendant was on February 9, 1958, indebted to plaintiff in any amount over and above the $350 which he had paid presents a question of fact which the trial court resolved against defendant.

■ Defendant on appeal enumerates eight specific assignments of error. No. 1 claims error arising from the refusal to strike Count I as a "complete departure and repugnant to the original petition." This final pleading had to do with the same

subject matter as the original petition. It was merely an enlargment and declared in more specific detail. The court did not err in refusing to strike it.

■ No. 2 predicates error upon the receipt of testimony concerning plaintiff's contract with Mr. Duncan under which plaintiff sublet defendant's cattle to pasture on Duncan's farm. The fact that plaintiff had done this was properly heard. But defendant says further under this point that he is not liable for any feed or expense incurred as a result of the contract or agreement with Duncan. It was plaintiff's testimony that during the period the cattle were with Duncan he, the plaintiff, did not on his own farm have suitable pasture available for them. There was evidence that the charge was a reasonable one and that plaintiff had paid Duncan for pasturing these Brookshire cattle. If this evidence was believed, we think defendant was chargeable with such expense under the circumstances then existing.

Appellant's assignments 4 to 8, inclusive, all have to do with and assert that plaintiff failed to establish and did not have an agister's lien on the cattle. Section 430.150, V.A.M.S., provides: "Every person who shall keep, board or train any horse, mule or other animal, shall, for the amount due therefor, have a lien on such animal, and on any vehicle, harness or equipment coming into his possession therewith, and no owner or claimant shall have the right to take any such property out of the custody of the person having such lien, except with his consent or on the payment of such debt; and such lien shall be valid against said property in the possession of any person receiving or purchasing it with notice of such claim".

■ Section 430.160, V.A.M.S., the immediately following section is entitled "Enforcement of Liens" and, as might be expected, spells out the procedure to be followed if the claimant wishes to enforce and collect the lien debt by sale of the

property. As we understand this case, plaintiff is not seeking to enforce his lien through sale of the property. The judgment, as entered, does not so provide and we do not so declare. However, Section 430.150, quoted above, in our opinion squarely gives the lien for "keep and board" and authorizes the person supplying same to hold the animals until the debt arising thereunder is paid.

In Cotton v. Gorrell, 180 Mo.App. 118, 167 S.W. 1187, plaintiffs purchased a stalk field from defendant and turned cattle into it. The cattle remained long after the stalk field was consumed. It was held that defendant's agister's lien was not limited to the contract price of the stalk field, but included the reasonable value of the additional feed and attention he was forced to give the cattle. See also Barton v. Brundage, 210 Mo.App. 446, 240 S.W. 890 and Sanders v. Brooks, Mo.App., 249 S.W.2d 178.

That leaves only No. 3, a general assignment that the evidence of plaintiff is so contradictory as to be self-destructive and furnishes no support for the finding and judgment. As an appellate court we are directed in jury waived cases by Section 510.310, subd. 4, V.A.M.S., to "* * * review the case upon both the law and the evidence as in suits of an equitable nature" and "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses". In McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, 703, our Supreme Court gave its approval to the following declaration of this rule in Lynn v. Coates, Mo., 142 S.W.2d 1014: " 'This rule of deference to the findings of the chancellor is one of necessity and convenience, and, while always limited to the conditions of the testimony in each particular case, is not to be ignored, unless the proof adduced is palpably insufficient to sustain the findings, or there is a strong preponderance of the evidence to show the court should have found to the contrary' (citing cases)".

 It is our opinion that plaintiff's evidence, if believed, made a case and established ample facts to justify entry of the judgment. Certainly after according the required deference to the judgment of the trial court as to credibility of the witnesses, we should not and do not hold that the judgment entered was clearly erroneous.

The judgment is affirmed.

SPERRY, C., not participating.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court. All concur.